UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

YORBY RAMOS GONZALEZ,

   Plaintiff,

v.              Case No: 2:12-cv-229-Ftm-38DNF

ROBERT HEMPHILL, M.D. and C.N.A. MCHALE,

   Defendants.
_____/

## OPINION AND ORDER[1]

Plaintiff Yorby Ramos Gonzalez ("Plaintiff"), proceeding *pro se*, initiated this action as a prisoner at Charlotte Correctional Institution in Punta Gorda, Florida by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. 1, filed April 24, 2012). In his complaint, Plaintiff sues Defendant Dr. Robert Hemphill ("Defendant Hemphill") because of his alleged failure to provide him with specialized orthopedic care or surgery for a pre-existing wound to his hip.[2] The matter is now before the Court on Defendant Hemphill's Motion for Summary Judgment (Doc. 39, filed January 3, 2014).

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] Defendant McHale was dismissed from this action on November 21, 2013 (Doc. 37).

In support of his motion for summary judgment, Defendant Hemphill argues that Plaintiff was provided proper care and treatment during the time he was incarcerated at Charlotte Correctional Institution (Doc. 39 at 10). Defendant Hemphill asserts that Plaintiff did not suffer from a serious medical condition and that he merely disagreed with the medical treatment he was provided. *Id.* at 11. Defendant Hemphill also asserts that he sought permission to obtain a second opinion from an orthopedic specialist for Plaintiff's hip wound but that the request was denied by Utilization Management of the Florida Department of Corrections. *Id.* Defendant Hemphill has attached numerous documents in support of his motion for summary judgment.[3]

On January 15, 2014, Plaintiff was directed to file a response to Defendant Hemphill's motion for summary judgment (Doc. 41). Plaintiff was cautioned that if he "fails to respond or responds, but the response does not demonstrate that there is a genuine issue of material fact, the Court may declare that the facts in the affidavits and/or documents supporting the motion are established as true and that there is no genuine issue of material fact in dispute." *Id.* at 1-2. Plaintiff did not file a response to the motion for summary judgment, and the time for doing so has passed. Accordingly, the motion is now ripe for review.

Because there is no objective evidence that Defendant Hemphill's decisions concerning Plaintiff's medical care were based upon, or influenced by, deliberate indifference to Plaintiff's well-being, Defendant Hemphill is entitled to summary judgment as a matter of law.

---

[3] Defendant Hemphill has labeled the attachments to his motion for summary judgment as Exhibits A through R. Hereinafter, references to the attachments (Ex. ___ at ___) will be to those filed by Defendant Hemphill on January 3, 2014 (Doc. 39).

I.      **Complaint and Motion for Summary Judgment**

According to his complaint, Plaintiff arrived at the Charlotte Correctional Institution in May of 2011 (Doc. 1 at 8). Prior to his transfer, Plaintiff had sustained a gunshot wound to his right hip and was treated at Jackson Memorial Hospital in Miami, Florida. *Id.* at 9. His treating physician at Jackson Memorial told Plaintiff that he needed an operation on his hip in order for it to function properly and normally. *Id.*

After his arrival at the Charlotte Correctional Institution, Plaintiff received care from Nurse Kelly, who is not a defendant in this action, for the injuries he received from the gunshot wound (Doc. 1 at 8). Nurse Kelly told Plaintiff that she would recommend that he see a specialist for his hip injury. *Id.* at 9.

On October 26, 2011, Plaintiff filed a grievance in which he alleged that the doctor had given him medicine but that he was still in pain (Doc. 1-1 at 1). He also alleged that the doctor had told him that he would receive special shoes. *Id.* In response, Plaintiff was told on November 1, 2011 that he was "still on the active list to see a specialist." *Id.* Plaintiff filed an objection to the response to his grievance (Doc. 1-1 at 2). In response to Plaintiff's objection, Defendant Hemphill told Plaintiff that he had already seen an outside specialist for his current condition and that no follow up treatment had been ordered. *Id.* at 3. Plaintiff was advised to sign up for sick call if he was still experiencing pain. *Id.*

On November 25, 2011, Plaintiff filed an appeal grievance in which he asserted that he needed to see a different specialist because the x-ray he received from the first specialist resolved neither the problem with his hip nor the associated pain (Doc. 1-1 at 4). Plaintiff asserted that he needed an operation and a hip replacement because his condition made it difficult for him to sleep on his right side. *Id.* In response to the appeal,

Plaintiff was advised that Defendant Hemphill had "appropriately addressed" Plaintiff's problems and was directed to sick call so that any additional concerns could be addressed by the health care staff. *Id.* at 5.

On December 1, 2012, Plaintiff filed a grievance in which he complained that he had made a sick call request on November 17 asking for Naproxen pain reliever, but had not yet been seen by a doctor (Doc. 1-1 at 7). Plaintiff was informed that he would be seen the following week. *Id.*

On March 30, 2012, Plaintiff filed another grievance in which he inquired about the status of his appointment with the orthopedist (Doc. 1-1 at 8). Plaintiff asserted that it was difficult for him to sleep because of the hip pain and that he missed meals because it hurt too much to walk to food service. *Id.* Plaintiff was informed that he had been denied a consultation with a specialist. *Id.*

Plaintiff claims that his current pain reliever is not alleviating his pain or helping his hip heal (Doc. 1 at 9). He asks the court to order that he be seen by a specialist.[4] *Id.* at 10. He also seeks $150,000 in compensatory and punitive damages. *Id.*

---

[4] On November 15, 2013, Plaintiff filed a change of address with the Court indicating that he is no longer incarcerated by the Florida Department of Corrections (Doc. 36). *See also* http://www.dc.state.fl.us/InmateReleases/detail.asp?Bookmark=1&From=list&SessionID=41691006 (showing that Plaintiff was released from custody on December 3, 2013). Because Plaintiff is no longer in custody, Plaintiff's claims for injunctive relief are dismissed as moot. *See McKinnon v. Talladega County*, 745 F.2d 1360, 1363 (11th Cir.1984) ("The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory or injunctive relief ."); *see also Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (finding that the plaintiff's claims for injunctive and declaratory relief regarding the conditions at the prison were moot since the plaintiff was transferred to another facility shortly after the complaint was filed); *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (affirming the dismissal of an inmate's request for injunctive relief as moot because at the time the district court rendered its decision, the inmate was no longer incarcerated at the prison where the alleged constitutional deprivation occurred).

In his motion for summary judgment, Defendant Hemphill argues that the evidence fails to support Plaintiff's claims of deliberate indifference (Doc. 39 at 10).  In support of his motion, Defendant Hemphill filed his own affidavit (Ex. A); a letter from William Nields of the Florida Department of Corrections Physician Advisor Committee (Ex. B); Plaintiff's x-ray results and radiology report (Ex. C; Ex. D); Health Services Bulletin No. 15.09.04 (Ex. E); Health slip passes for restricted activity and orthopedic shoes (Ex. G; Ex. G; Ex. H); Plaintiff's laboratory results (Ex. I); Defendant Hemphill's records of Plaintiff's medical care (Ex. J; Ex. K; Ex. L; Ex. M; Ex. N; Ex. O; Ex. P); and records relating to Plaintiff's transfer to Charlotte Correctional Institution (Ex. Q; Ex. R).

### III. Legal Standards

#### a. *Summary Judgment*

Summary judgment is appropriate only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant may meet this burden by presenting evidence that would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present

evidence in support of some elements of its case on which it bears the ultimate burden of proof. *Id.* at 322–324.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, (1986).

### b. Deliberate Indifference

Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983. The Eighth Amendment mandates that prison officials provide medical care and "must take measures to guarantee the safety of inmates[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations and quotations omitted). Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 (1976). To establish deliberate indifference a plaintiff must demonstrate that the defendant: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) his conduct was more than mere negligence. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). A plaintiff must also show causation between the defendant's indifference and his or her injury. *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).

### III. Analysis

The seriousness of a medical need is an objective inquiry. *Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir. 2005). The Eleventh Circuit has defined a "serious medical need" as:

> one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm.

*Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (internal citations and quotation marks omitted). Defendant Hemphill argues that Plaintiff does not have a serious medical condition because his wound is well healed, not tender to the touch, and not red (Doc. 39 at 11). Defendant Hemphill claims that Plaintiff suffers only "routine discomfort." *Id.* However, Plaintiff asserts that he cannot sleep on his right side and that it often hurts too much for him to walk to food service (Doc. 1-1 at 8). Moreover, Plaintiff indicated in his complaint, and Defendant Hemphill does not dispute, that he was shot in the hip with a .357 Magnum and that he still has bullet fragments in his hip area (Doc. 1 at 9). This assertion is supported by the x-ray results submitted by Defendant Hemphill (Ex. D). Defendant Hemphill has not provided evidence to support his claim that Plaintiff suffers only "routine discomfort" from his hip injury. Accordingly, for the purpose of this Order only, the Court will assume that Plaintiff's hip injury is a serious medical need.

Defendant Hemphill has provided evidence showing that, while Plaintiff was incarcerated at Charlotte Correctional Institution, he received regular medical attention for the wound to his hip. Plaintiff was seen by medical professionals at least ten times between March and November of 2011 (Ex. J; Ex. K; Ex. L; Ex. M; Ex. N; Ex. O). During

that time, he received pain medication (Ex. A; Ex. M), an x-ray (Ex. C; Ex. D), laboratory analyses (Ex. A; Ex. I), a prescription for orthopedic shoes (Ex. A; Ex. H), and a lower bunk pass and health pass limiting the time Plaintiff was required to stand without a break (Ex. A; Ex. F).  In addition, despite his opinion that surgery was not warranted, Defendant Hemphill requested that Plaintiff receive a second opinion from an orthopedist, but his request was denied by Utilization Management at the Florida Department of Corrections (Ex. A; Ex. B).  In his affidavit, Defendant Hemphill attests that Plaintiff received appropriate care and that it is his opinion that there is no acute need for surgery on Plaintiff's hip (Ex. A).

      Once Defendant Hemphill moved the Court and identified grounds demonstrating the absence of a genuine issue of a material fact, the burden shifted to Plaintiff to go beyond the pleadings, and designate specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324 (quoting Fed R. Civ. P. 56(e)).  Other than the unsworn statements in his complaint, Plaintiff has provided no evidence to support his claim of deliberate indifference.  At best, Plaintiff has demonstrated only a difference in medical opinion between Defendant Hemphill and himself as to the proper course of treatment for his hip.

      The facts of this case are analogous to those in the Supreme Court case of *Estelle v. Gamble*, 429 U.S. at 107.  In *Estelle*, an inmate brought a § 1983 claim against prison medical staff for deliberate indifference to his serious medical needs.  The inmate was seen and treated by the prison medical staff for, *inter alia*, a back injury.  The defendant doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants, and pain relievers. *Id.*  The inmate contended that more should have been done

8

by way of diagnosis and treatment, and the Court of Appeals agreed that an x-ray of the inmate's lower back may have been appropriate. *Id.* However, the Supreme Court held that the inmate had failed to state a claim for deliberate indifference. The Court explained:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court[.]

*Id.*

Like the inmate in *Estelle*, Plaintiff argues that Defendant Hemphill should have done more by way of diagnosis and treatment, including making further requests to the Florida Department of Corrections Utilization Management that Plaintiff receive surgery. He asserts that Defendant Hemphill's failure to do so demonstrated deliberate indifference. However, Plaintiff's claim is substantially similar to the claim in *Estelle*, which the Supreme Court held may state a claim for medical malpractice, but failed to state a claim for deliberate indifference. Plaintiff has provided no evidence in support of his allegations of deliberate indifference and a non-movant does not create a genuine issue of material fact by relying on conclusory allegations based on subjective belief. *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989). The only evidence before the Court shows that Defendant Hemphill provided medical attention and treatment for Plaintiff's complaints. Therefore, Plaintiff has failed to create an issue of material fact, and Defendant Hemphill is entitled to summary judgment on Plaintiff's claims.

Accordingly, it is hereby **ORDERED**:

1. Plaintiff's claims for injunctive relief are **DISMISSED** as moot;

      2.      Defendant Hemphill's motion for summary judgment (Doc. 39) is **GRANTED,** and Defendant Hemphill is entitled to summary judgment as a matter of law; and

      2.      With no remaining claims or defendants, the **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

      **DONE** and **ORDERED** in Fort Myers, Florida on March 25, 2014.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4 3/25/14
Copies: Yorby Ramos Gonzalez
Counsel of Record